Filed 8/28/23  P. v. Guzman CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078441 |
| v. | (Super. Ct. No. FWV21000856) |
| ARTURO COLON GUZMAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Ingrid A. Uhler, Judge. Affirmed.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Warren Williams, and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Defendant and appellant Arturo C. Guzman stabbed his son and his son's girlfriend with a large kitchen knife in an unprovoked attack.  A jury convicted him of two counts of attempted murder and two counts of assault with a deadly weapon, and the trial court sentenced him to 12 years eight months in prison.

Defendant argues his trial counsel was ineffective because counsel admitted defendant's guilt in violation of *McCoy v. Louisiana* (2018) 138 S.Ct. 1500 (*McCoy*), failed to object to the trial court's use of an improper circumstance in aggravation and failed to request a mental health diversion.  He also argues the matter must be remanded for resentencing under recently enacted legislation.  We affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant lived in an apartment in Fontana with his son, Horacio, his two daughters, and Horacio's girlfriend, Daisy.

One evening, Horacio and Daisy came home from work and found defendant drinking beer and listening to loud music in the kitchen.  Horacio briefly talked with defendant before going to his bedroom, where he and Daisy got ready to go to the gym.

About 30 minutes later, Horacio and Daisy suddenly heard loud banging sounds outside their bedroom and heard defendant mumbling to himself.  Daisy heard defendant saying, "'I don't care what happens to me.'"

Horacio opened the bedroom door and saw defendant standing less than two feet away, holding one or two knives. Daisy remembered defendant holding two "really big kitchen knives." Defendant immediately charged at Horacio with the knives while Horacio screamed for defendant to stop. As defendant swung the knives around trying to stab Horacio and Daisy, Horacio felt a knife pierce his chest.

Horacio ran around defendant towards the living room. Daisy ran after Horacio and tried to go out through the front door, but it was barricaded with a kitchen chair. Defendant followed them into the living room. Horacio told Daisy to run as defendant started swinging the knives at both of them again, stabbing Horacio in his head, back, and neck, and slashing Daisy on the head.

Horacio managed to move the chair and unlock the front door, and he and Daisy ran to get help while Horacio screamed for someone to call 911. Within minutes, Horacio saw defendant leave the apartment, go downstairs, and walk to the back of the apartment complex. A neighbor, who heard someone screaming, went outside and saw Horacio and Daisy bleeding with a trail of blood behind them. The neighbor followed defendant, who got into a car and attempted to hit the neighbor and others with the car while fleeing.

Defendant was charged with two counts of willful, deliberate, and premeditated attempted murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a); counts 1 & 2),[1] and two counts of assault with a deadly weapon (§ 245, subd. (a)(1); counts 3 & 4). The

_____

[1] All further statutory references are to the Penal Code.

3

information alleged that as to counts one and two, defendant personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)), and that as to all four counts, he inflicted great bodily injury on the victims (§ 12022.7, subd. (a)).

A jury convicted defendant on all counts and found the personal use of a deadly weapon enhancements true on counts one and two. The jury found the willful, deliberate, and premeditated allegation not true as to both attempted murder counts, and the great bodily injury allegation not true as to all four counts. The trial court sentenced defendant to a total term of 12 years eight months, which included a nine-year upper term on count 1 plus a one-year consecutive enhancement for the personal use of deadly weapon finding.

III.

DISCUSSION

A. McCoy *Error*

Horacio testified that defendant was a heavy drinker and was drinking beer in the kitchen when he and Daisy came home from work shortly before the attack. Defendant, on the other hand, testified that he was watching a movie, not drinking.

At defense counsel's request, the trial court instructed the jury on voluntary intoxication as a defense to attempted murder but not to assault. The instruction explained that the jury could consider whether defendant was voluntarily intoxicated "in deciding whether [he] acted with an intent to kill or . . . with deliberation and premeditation."

4

While the court was instructing the jury, defendant asked, "Why don't you tell the jury that there was alcohol in my son's blood. You didn't tell that to the jury." Outside the jury's presence, the court admonished defendant and asked counsel to speak with him.

After doing so, counsel told the court: "I think that the disagreement here really falls under perhaps the parameter of *McCoy*. I'm not sure. He doesn't want me to talk about the [v]oluntary intoxication to vitiate the intent of the premeditated murder . . . and get it down to a 245. I'm trying to talk to him about the fact that if he were to be convicted 245 . . . then the sentence wouldn't be that much more than [the] offer was at the time. [B]ut he doesn't want me to talk about . . . him drinking. I feel compelled I have to talk about the 245's."

Shortly after, defendant interjected: "I don't want the record to state that I'm an alcoholic. I was drinking. I don't drink alcohol at all in my life. Okay. I come from an alcoholic father. I don't drink alcohol. Okay. For me to be portrayed as an alcoholic, like, is wrong." During the brief colloquy with the court that followed, defendant repeatedly emphasized that he did not want counsel to argue that defendant was drunk during the attack.

The trial court then brought the jury back into the courtroom and asked the prosecutor to begin closing argument. As to voluntary intoxication, the prosecutor argued that it was no defense because "defendant knew what he was doing," even if he was drunk at the time.

5

Toward the end of his closing argument, defense counsel responded to the prosecutor's argument on voluntary intoxication: "One other issue, though. It's [v]oluntary intoxication. Look, [Horacio] said when they walked in, he just wasn't drinking beer, but he was drunk. And he seen [*sic*] him drunk before. He knows the way he appears. If somebody becomes voluntarily intoxicated, then that gets rid of or eviscerates the willful, deliberate, premeditation of murder. Gets rid of it. That doesn't mean that it's all over. Because that is not a defense to assault with a deadly weapon, just to murder. So if you believe that the complaining witness says that [appellant] was drunk, then that eviscerates—gets rid of intent to murder. It's not the intent. It's a different type of intent for 245 or as you'll see, assault with a deadly weapon now. . . . ¶ . . . So they have to prove to you beyond a reasonable doubt—any reasonable doubt—that [defendant] is guilty of either the murder or of the assault with a deadly weapon. Given the involuntarily [*sic*] intoxication, they have [to] prove that to you."

At sentencing, defense counsel explained: "With respect to the defense of an involuntary intoxication, which would initiate [*sic*] the intent for attempted murder and to just reduce that down to the assault with a deadly weapon, I would only say that but for the *McCoy* case, we didn't proffer that defense. I was instructed not to."

In *McCoy*, the defendant "vociferously insisted on his innocence and adamantly objected to any admission of guilt," yet the trial court allowed his counsel to concede the defendant committed three murders. (*McCoy*, *supra*, 138 S.Ct. at p. 1503.) The high court held this violated the defendant's Sixth Amendment right to counsel, reasoning that

6

"it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt." (*Id*. at p. 1505.)

There was no *McCoy* error here. Defense counsel never conceded defendant's guilt, but instead argued that defendant was innocent and urged the jury to acquit him of all charges. In doing so, defense counsel emphasized that defendant's version of events—including that he was not drunk and did not stab either victim—was correct while Horacio's testimony was not credible. Defense counsel also went through various purported problems with the prosecution's evidence while repeatedly stating the prosecution had failed to meet its burden. As counsel put it, "There's a hole in this case. We're not the ones who have to shovel it in. The prosecution does." Defense counsel's statements throughout closing argument made clear that defendant's position was that he was entirely innocent.

Defense counsel's argument about voluntary intoxication did not undermine defendant's position that he was innocent of all charges. Nor did it suggest, contrary to defendant's wishes, that defendant was drunk during the incident. Instead, defense counsel was only responding to the prosecutor's closing argument that although the jury should believe Horacio's account that defendant was drunk, voluntary intoxication was not a valid defense. As defense counsel explained to the jury, "*if* you believe" Horacio's testimony that defendant was drunk, "then that eviscerates—gets rid of intent to murder."

7

(Italics added.) Counsel then reminded the jury that the prosecution had the burden of proof as to all elements of the offenses, including the issue of voluntary intoxication.

Thus, when viewed in context of the parties' closing arguments, defense counsel never argued that defendant was drunk during the incident. Instead, counsel argued that *if* the jury found that defendant was in fact drunk at the time, then the prosecution had to prove beyond a reasonable doubt that his intoxication did not negate his intent to murder. Throughout defense counsel's closing argument, he maintained that defendant was innocent of all charges because he did not stab the victims. We, therefore, conclude there was no *McCoy* error here.

B. *Remand for Resentencing*

When stating its sentence, the trial court recognized that the middle term was the presumptive sentence under recently amended section 1170, subdivision (b) and that it could impose the upper term only as prescribed by section 1170, subdivision (b)(2). The court also noted it could rely on a certified record of defendant's prior conviction to impose an upper term under section 1170, subdivision (b)(2). The court found that defendant had previously been convicted of felony domestic violence (§ 273.5), and "us[ed] this prior conviction as the aggravating factor to impose the upper term of nine years in this matter," because the "fact that the defendant suffered this prior conviction indicates that his present convictions are of increasing seriousness." The court continued: "In addition, the fact that the jury found true that the defendant used a deadly weapon supports the imposition of the aggravated term."

8

Defendant contends the trial court improperly relied on his prior conviction and the jury's deadly weapon true finding to impose an upper term on count 1. The People argue the trial court properly relied on the prior conviction, which defendant admitted, and concede that the court should not have relied on the deadly weapon finding, but argue the error was harmless. We agree with the People in all respects.

"'Senate Bill No. 567 (2021-2022 Reg. Sess.) amended section 1170, subdivision (b), making the middle term of imprisonment the presumptive sentence. (§ 1170, subd. (b)(2); Stats. 2021, ch. 731, § 1, effective Jan. 1, 2022.) A trial court may impose an upper term sentence only where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a reasonable doubt. (§ 1170, subd. (b)(1)-(2).)'" (*People v. Lewis* (2023) 88 Cal.App.5th 1125, 1130 (*Lewis*), rev. granted S279147, May 17, 2023.) Under section 1170, subdivision (b)(3), "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." However, "[t]he court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b)(5).) All of these provisions applied at the time of defendant's sentencing, which occurred after section 1170 was amended.

We first reject defendant's argument that he did not admit that he had previously been convicted of felony domestic violence. Although he initially testified that he could not remember if he had been convicted of that offense, he later admitted that he had been

9

convicted of the offense, explaining that he "was [a] little confused" when first asked about the conviction. Later, when asked who was with him when he went to the hospital for a stroke, he replied, "Prison officials because of the domestic violence as you talked about that I had." Without any objection from defendant, the trial court later instructed the jury that they had "heard the defendant was convicted of a felony domestic violence charge." Then, during closing argument, defense counsel stated that it was "true" that defendant had been convicted of domestic violence, but that "he took responsibility for it" and "went off to the jail."

Because defendant admitted to the conviction, the trial court properly relied on it as an aggravating circumstance to impose an upper term on count 1 under section 1170, subdivision (b)(2). (See *People v. Dunn* (2022) 81 Cal.App.5th 394, 404.) And because we are satisfied beyond a reasonable doubt that a jury would have found beyond a reasonable doubt that defendant was previously convicted of felony domestic violence, the trial court's reliance on defendant's prior conviction satisfied the Sixth Amendment. (See *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1111.)

But defendant argues, the People concede, and we agree that the trial court erroneously relied on the jury's personal use of a deadly weapon true finding to impose the upper term. As section 1170, subdivision (b)(5) unambiguously states, "[t]he court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."

10

Defendant argues we assess the error under *People v. Lopez* (2022) 78

Cal.App.5th 459, while the People urge us to apply this court's test in *Lewis*, *supra*, 88

Cal.App.5th at p. 1131.  But those cases apply when a trial court relies on circumstances

in aggravation to impose an upper term when the facts underlying the circumstances have

not been stipulated to by the defendant and have not been found true beyond a reasonable

doubt by a jury.  (*People v. Lopez*, *supra*, at pp. 467, 467, fn. 11; *Lewis*, *supra*, at p.

1131.)  Here, however, the trial court permissibly relied on defendant's prior conviction

but impermissibly relied in part on the jury's true finding on the personal use of a deadly

weapon to impose an upper term.  Section 1170, subdivision (b)(5) prohibited the trial

court from doing so, regardless of what defendant stipulated to or what the jury found.

(§ 1170, subd. (b)(5) ["The court may not impose an upper term by using the fact of any

enhancement upon which sentence is imposed under any provision of law."].)

    We need not decide which standard of prejudice applies because the error was

harmless under any standard.  The trial court had the discretion to impose an upper term

on count 1 based on defendant's uncontested prior felony domestic abuse conviction,

which was less serious than his current convictions for attempted murder.  (See California

Rules of Court, rule 4.421(b)(2); § 1170, subd. (b)(3) ["[T]he court may consider the

defendant's prior convictions in determining sentencing.)  The court explained that it was

imposing the upper term for that reason alone, stating:  "I'm using this prior conviction as

*the* aggravating factor to impose the upper term of nine years in this matter.  The fact that

the defendant suffered this prior conviction indicates that his present convictions are of

11

increasing seriousness." (Italics added.) The court then explained that "in addition" to this aggravated circumstance, defendant's use of a deadly weapon also "support[ed] the imposition of the aggravated term."

In our view, these comments make clear that the trial court would have imposed the upper term on count 1 even if it did not consider the jury's true finding on the deadly weapon enhancement allegation. The court's reliance on that finding was therefore harmless under any standard. As a result, defense counsel was not ineffective for failing to object to the court's consideration of the finding when imposing the upper term.

C. *Mental Health Diversion*

Defendant contends his trial counsel was ineffective for failing to request a mental health diversion under section 1001.36. We disagree.

To prevail on an ineffective assistance of counsel (IAC) claim, the defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694; accord, *People v. Johnson* (2015) 60 Cal.4th 966, 979-980; see *People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1148.) A """"reasonable probability"""" is a probability sufficient to undermine confidence in the outcome of the proceeding. (*People v. Mbaabu*, *supra*, at p. 1149; *Strickland v. Washington*, *supra*, at p. 697.) The defendant bears the burden of demonstrating by a preponderance of the evidence that

12

defense counsel's performance was deficient and it resulted in prejudice. (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)

"[R]arely will an appellate record establish ineffective assistance of counsel." (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) If the record sheds no light on counsel's actions, the claim must be rejected unless no satisfactory explanation exists or counsel was asked for an explanation and failed to provide one. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) We will not find ineffective assistance of counsel "unless there could be no conceivable reasonable for counsel's acts or omissions." (*People v. Weaver* (2001) 26 Cal.4th 876, 926.)

A trial court may grant pretrial diversion to a defendant who meets *all six* elements outlined in section 1001.36, subdivisions (b) and (c). (§ 1001.36, subd. (a).) These elements are: (1) the court is satisfied that the defendant suffers from a mental disorder identified in the Diagnostic and Statistical Manual of Mental Disorders; (2) the court is satisfied the "defendant's mental disorder was a significant factor in the commission of the charged offense"; (3) a qualified mental health expert opines "the defendant's symptoms of the mental disorder . . . motivating the criminal behavior would respond to mental health treatment"; (4) the defendant "consents to diversion and waives [his or her] right to a speedy trial"; (5) the defendant "agrees to comply with treatment as a condition of diversion"; and (6) the court is satisfied "the defendant will not pose an unreasonable risk of danger to public safety, as defined in [s]ection 1170.18, if treated in the community." (§ 1001.36, subds. (b), (c).)

Defense counsel had several conceivable tactical reasons for not requesting a mental health diversion. First and foremost, defendant consistently denied he had any mental health issues and consistently refused mental health treatment. When defense counsel declared a doubt as to defendant's capacity before trial, defendant claimed counsel was "malicious." During those competency proceedings, a psychiatrist reported that defendant "viewed the idea of being considered incompetent insulting." Defendant repeatedly told evaluating medical professionals that he did not have any mental health problems and refused medication and further treatment.

Second, defense counsel may have reasonably thought that a request for a mental health diversion would have been fruitless. After defendant was evaluated as part of the competency proceedings, it was reported that he had "current symptoms of mental illness or developmental disability," and that he was competent in all 14 areas assessed during testing.

Third and relatedly, because defendant was deemed competent, defense counsel may have reasonably concluded that defendant's potential mental health issues were not "a significant factor in the commission of the charged offense."

Finally, defense counsel may not have requested a mental health diversion because he reasonably believed that the court would not find that defendant did not pose an unreasonable risk of danger to public safety (§ 1001.36, subd. (c)(4).) As the court stated at sentencing, the court declined to strike the personal use of a deadly weapon sentence

14

enhancement because doing so would "place the victims in further serious danger of physical injury as evidenced by the defendant's conduct."

In short, defense counsel had sufficient tactical reasons not to request a mental health diversion. We therefore reject defendant's claim that counsel was ineffective for not requesting a diversion.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

MILLER
J.

FIELDS
J.